Case No. 17-1526

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

John Doe and Michael Ericksen,
Plaintiffs/Appellants,

v.

United States,
Defendant/Appellee

## ON APPEAL FROM THE UNITED STATES DISTRICT
## COURT FOR THE EASTERN DISTRICT OF MICHIGAN

## APPELLANTS' BRIEF

Michael Ericksen (P40385)
Attorney for Plaintiffs-Appellants
8376 Huntington Road
Huntington Woods, MI 48070
248-217-9705
mlericksen@yahoo.com

**Disclosure of Corporate Affiliations/Financial Interests**

Neither Appellant is a subsidiary or affiliate of a publicly-owned corporation. No publicly-owned corporation not a party to this appeal has a financial interest in the outcome.

**Table of Contents**

Disclosure of Corporate Affiliations/Financial Interests ...........................................1

Table of Authorities .............................................................................................2

Jurisdictional Statement ........................................................................................6

Standard of Review ..............................................................................................6

Issues Presented .................................................................................................7

Statement of Case...............................................................................................7

Summary of Argument .........................................................................................9

Argument...........................................................................................................12

    Disqualification...........................................................................................12

        Disregard for Procedure, Non-Existent Evidence.............................13

        Distortion of *Ramsey* .......................................................................15

        Distortion of *Humphries*...................................................................20

        Obfuscation .......................................................................................24

        Glaring Omissions.............................................................................25

        Foregone Conclusion........................................................................29

    Preclusion (Doe's Claims).........................................................................31

        Issue and Claim Preclusion -- Fairness Requirement (Both Claims) .32

Issue Preclusion -- Necessity Requirement (Both Claims)................33

Claim Preclusion (Battery Claim) ......................................................35

Failure to State a Claim (Ericksen's Claim)..........................................................................................38

Conclusion ..........................................................................................39

Certificate of Compliance ...................................................................41

Certificate of Service ..........................................................................42

Addendum............................................................................................42

## Table of Authorities

### Cases

*Abidor v. Napolitano*, 990 F.Supp.2d 260 (E.D.N.Y. 2013) ....................................31

*Alexander v. United States*, 362 F.2d 379 (9th Cir. 1966)........................................30

*Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971). ............................................35

*Burnette v. Bureau of Prisons*, Case No. CV06-1396-A, 2009 WL 3415301 (W.D. La. 2009) (Kirk, J., magistrate judge; unpublished), *adopted as mod'd*, 2009 WL 3180223 (W.D. La. 2009) (unpublished)..............................................................37

*Carlson v. Green*, 446 U.S. 14 (1980) ....................................................................36

*Carroll v. U.S.*, 267 U.S. 132, 149 (1925). ...................15-17, 19, 20, 24, 25, 27, 40

*City of Indianapolis v. Edmond*, 531 U.S. 32 (2000) ..............................................30

*Coca-Cola v. Procter & Gamble*, 822 F.2d 28 (6th Cir. 1987)................................35

*Dixon v. Clem*, 492 F.3d 665 (6th Cir. 2007). ..........................................................6

*EEOC v. Frank's Nursery & Crafts*, 177 F.3d 448 (6th Cir. 1999) .......................32

*Embody v. Ward*, 695 F.3d 577 (6th Cir. 2012).....................................................33

*Ericksen v. Doe*, No. 15-2128, 2015 WL 4041316 (E.D. Mich. July 1, 2015) (unpublished), *recon. denied*, 2015 WL 13035520 (E.D. Mich July 23, 2015) (unpublished),  *aff'd*, *D.E. v. Doe*, 834 F.3d 723 (6th Cir. 2016), *cert. denied*, __ S.Ct. __, 2017 WL 1385209 (June 12, 2017) ........................ 13, 27, 29, 33, 34, 38

*F.H. ex rel. Hall v. Memphis City Sch.,* 764 F.3d 638, 642 (6th Cir. 2014).............6

*Garner v. Cuyahoga County Juv. Court*, 554 F.3d 624, 643 (6th Cir. 2009)..........27

*Golden Eagle v. Burroughs Corp.*, 809 F.2d 584, 590 (9th Cir. 1987)...................28

*Liteky v. United States*, 510 U.S. 540, 555 (1994)....................................................12

*Lyng v. Northwest Indian Cemetery Prot. Ass'n*, 485 U.S. 439 (1988) .................19

*Minor v. Comm'r*, 826 F.3d 878 (6th Cir. 2016) .....................................................27

*Montana v.United States*, 440 F.3d 147 (1979).............................................. 32, 37

*Nuclear Transportinor v.United States*, 890 F.2d 1348 (6th Cir. 1989) ................35

*People v. Lyon*, 227 Mich.App. 599 (1998)...............................................................33

*Rita v. United States*, 551 U.S. 338 (2007)..............................................................27

*Serra v. Pichardo*, 786 F.2d 237 (6th Cir. 1986)......................................................36

*Silverman v. Benjamin Ctr.,* 603 F.Supp. 430 (E.D. N.Y. 1985) ...........................25

*Spilman v. Harley*, 656 F.2d 224 (6th Cir. 1981) ....................................................34

*Sterling v. United States*, 85 F.3d 1225 (7th Cir. 1996) .................................... 36, 37

*Stern v. Mascio*, 262 F.3d 600 (6th Cir. 2001) ................................................... 32, 33

*Superintendent v. Hill*, 472 U.S. 445 (1985) ...........................................................15

*Taylor v. Sturgell*, 553 U.S. 880 (2008).....................................................................32

*Ting v. United States,* 927 F.2d 1504 (9th Cir. 1991)........................................ 33, 37

*United States v. Barbera*, 514 F.2d 294 (2d Cir. 1975)............................................30

*United States v. Boumelhem*, 339 F.3d 414 (6th Cir. 2003) ............ 17, 20-24, 27, 33

*United States v. Cortez-Rocha*, 394 F.3d 1115 (9th Cir. 2005)................................31

*United States v. Ferguson*, 681 F.3d 826 (6th Cir. 2012)..........................................15

*United States v. Flores-Montano*, 541 U.S. 149 (2004) .............................. 17, 18, 31

*United States v. Garcia*, 672 F.2d 1349 (11th Cir. 1982)..........................................20

*United States v. Glaziou*, 402 F.2d 8 (2nd Cir. 1968), *cert. denied*, 393 U.S. 1121
    (1969)...................................................................................................................27

*United States v. Humphries*, 308 Fed. Appx. 892 (6th Cir. 2009) (unpublished),
    *aff'g* Case No. 06-20339, 2007 WL 1059336 (E.D. Mich. April 9, 2007)
    (unpublished), *cert. denied*, 556 U.S. 1275 (2009) ..................... 20, 22-25, 27, 40

*United States v. Irving*, 452 F.3d 110 (2nd Cir. 2006)..............................................18

*United States v. Juvenile Female*, 566 F.3d 943 (9th Cir. 2009), *cert. denied*, 130
    S.Ct. 1111 (2010)................................................................................................34

*United States v. Lawson*, 461 F.3d 697 (6th Cir. 2006)...........................................18

*United States v. Mayer*, 818 F.2d 725 (10th Cir. 1987)..................................... 20, 23

*United States v. Montoya de Hernandez*, 473 U.S. 531 (1985).................. 17-19, 39

*United States  v. One (1) 1966 Beechcraft Baron*, 788 F.2d 384
 (6th Cir. 1986) ................................................................. 21, 23, 39
*United States v. Pickett*, 598 F.3d 231 (5th Cir. 2010) ............................20
*United States v. Ramsey*, 431 U.S. 606 (1977) ............. 15-18, 20, 21, 24, 26, 27, 40
*United States v. Romm*,  455 F.3d 990 (9th Cir. 2006), *cert. denied*, 549 U.S. 1150
 (2007) ...........................................................................................23
*United States v. Shepperson*, 739 F.3d 176 (4th Cir. 2014) ....................35
*United Statees  v. Stanley*, 545 F.2d 661 (9th Cir. 1976)...........................19
*Van Strum v. Lawn*, 940 F.2d 406 (9th Cir. 1991)....................................35
*Wesley v. Campbell*, 779 F.3d 421 (6th Cir. 2015)..................................... 13, 34, 38
*Wilkins v. Jakeway*, 183 F.3d 528 (6th Cir. 1999)...................................35
*Williams v. WCI Steel*, 170 F.3d 598 (6th Cir. 1999) ...............................28
*Young v. Barker*, 158 Mich.App. 709 (1987) (*per curiam*).......................33

## Statutes

28 USC §455(a) ............................................................................12
28 USC §1291 ...............................................................................6
28 USC §1331 ...............................................................................6
28 USC §2401(b) ...........................................................................36
28 USC §1346(b) ...........................................................................6
28 USC §2674 ...............................................................................6
28 USC §2675 ...............................................................................36
28 USC §2676 ...............................................................................36
42 USC §1983 ...............................................................................28

## Regulations/Rules

19 CFR §101.1 ...............................................................................18

FRAP 3(a)(1)...................................................................................6
FRAP 4(a)(1)(B)(iv) ........................................................................6

FRCP 12(b))...........................................................................................9, 28

6 Cir. R. 32.1(b) ........................................................................................24

6 Cir. I.O.P. 32.1(b) ...................................................................................24

**Law Review**

Leong & Belzer, <u>Enforcing Rights</u>, 62 UCLA L.Rev. 306 (2015)...........................28

Yung, <u>Flexing Judicial Muscle: An Empirical Study of Judicial Activism in the</u>
   <u>Federal Courts</u>, Northwestern L.Rev., Vol. 105, No.1, 1 (2011) ........................31

West, <u>Progressive and Conservative Constitutionalism</u>, 88 Mich.L.Rev. 641, 648
   (1989-90)...............................................................................................28

## Jurisdictional Statement

Each Appellant alleges that persons employed by Appellee subjected him to false arrest and/or false imprisonment.   Complaint [R1], at   Page ID 11-13. Appellant John Doe also alleges that a U.S. employee named Joseph Vittorini committed a battery against him.  *Id*. at Page ID 12.  These claims are based on Michigan law.    *Id*. at Page ID 11-13.    The district court has subject-matter jurisdiction pursuant to 28 USC §§ 1331, 1346(b), and 2674.

This appeal is from a final order [R19] and judgment [R20] of the district court that disposed of all claims asserted in the action, as well as from his order [R17] denying Appellants' motion [R15] asking that Judge Steeh disqualify himself.  This Court has jurisdiction over the appeal pursuant to 28 USC §1291.

The order and judgment from which appeal is taken were entered on March 9, 2017.  Notice of appeal [R21] was filed on May 5, 2017.  That is within the time frame permitted under FRAP 3(a)(1) and FRAP 4(a)(1)(B)(iv).

## Standard of Review

All issues presented in this appeal which relate to the dismissal order are subject to *de novo* review.  *F.H. ex rel. Hall v. Memphis City Sch.,* 764 F.3d 638, 642 (6th Cir. 2014).  The denial of Appellant's motion to disqualify is reviewed for abuse of discretion.  *Dixon v. Clem*, 492 F.3d 665, 671 (6th Cir. 2007).

## Issues Presented

(1) Whether Judge Steeh erred in holding that his dismissal of an earlier lawsuit filed by Appellant Doe against certain employees of the United States (the *Bivens* Case) provided no sound basis for inferring bias;

(2) Whether Judge Steeh erred in holding that this action is barred by the *Bivens* Case.

## Statement of Case

While driving eastbound on I-94 in Michigan on June 22, 2012, John Doe arrived through inadvertence at the U.S. side of the Blue Water Bridge, a port of entry staffed by U.S. Customs and Border Protection (CBP) personnel. He informed the toll-booth officer of his mistake. The toll-booth officer allowed Doe to turn his vehicle around, handed him a card identifying him as a turnaround motorist, and instructed him to present the card to an inspection-booth officer prior to departing the bridge. After taking the card from Appellant, the inspection-booth officer, Roberta Repic, required him to proceed to an inspection area, where Doe was made to exit his car and detained in the nearby station house. While Doe was detained in the station house, officer Joseph Vittorini conducted a physical search of his vehicle. Vittorini subsequently searched, handcuffed, and arrested Doe based on an alleged discovery of a small amount of marijuana and drug

paraphernalia in the trunk of the vehicle.  Vittorini was advised that Doe would not be federally charged, but continued to detain him until an officer from the Port Huron police department – which Vittorini had contacted – arrived at the bridge and took Doe into custody.  At no time prior to the the alleged discovery of marijuana/paraphernalia was Doe was suspected of wrongdoing.  Complaint [R1] at ¶¶ 22-43.

Misdemeanor charges were brought against Doe in state court, and appellant Michael Ericksen defended him.  On November 20, 2012, Ericksen drove to the Blue Water Bridge from the U.S. side and explained to the toll-booth officer that he wanted to inquire as to how he could obtain a copy of the CBP report relating to Doe's arrest.  The officer gave Ericksen the same card as Doe had received, and directed him to the station house.  Ericksen parked his vehicle, entered the station house, presented the card to a CBP officer, and explained why he was there.  He was detained in the station house while CBP personnel physically searched his backpack and ran a warrants check with his driver's license.  After leaving the station house, Ericksen was required to wait in line for an open inspection booth, provide identification to the inspection-booth officer, and undergo questioning from that officer.  *Id.* at ¶¶ 50-61.

In the Complaint, filed  August 22, 2016, Doe alleges battery, and both Appellants allege false imprisonment.  The U.S. filed a motion to dismiss [R7]

8

under FRCP 12(b)(6) on November 8, 2016.  Citing a previous lawsuit filed by Doe against individual CBP employees that Judge Steeh had dismissed (the *Bivens* Case), the U.S. argued that this action is barred by the doctrines of issue and claim preclusion.  Appellants filed a response [R9] on December 8, 2016.  A reply [R16] was filed by the U.S. on January 5, 2017.

On January 4, 2017, Appellants filed a motion to disqualify Judge Steeh [R15], arguing that his order dismissing the *Bivens* Case was so poorly reasoned that an inference of bias is warranted.  The judge denied that motion in an order [R17] entered on January 10, 2017.  Appellee's dismissal motion was granted in an unpublished order [R19; 2017 WL 930034] entered on March 9, 2017.  Plaintiffs' notice of appeal [R21] was filed on May 5, 2017.

## Summary of Argument

Judge Steeh abused his discretion in holding that his dismissal order in the *Bivens* Case did not warrant an inference of bias. In that case, Doe alleged that he was unreasonably seized by CBP personnel in violation of his Fourth Amendment rights.  Because the *Bivens* defendants moved for dismissal pursuant to FRCP 12(b)(6), Judge Steeh was obliged to accept as true Doe's allegation that the officers staffing the toll booth and the inspection booth had no reasonable basis for suspecting him of wrongdoing.  But while Judge Steeh purported to credit that

allegation, he didn't *actually* do so.  Instead, he made a finding of fact that both Repic (the inspection-booth officer) and the unidentified  toll-booth officer had reasonable grounds for suspecting Doe of lying.  *No* evidence supports that finding and, in the context of a Rule 12(b)(6) motion, it was blatantly inappropriate for Judge Steeh to reject Doe's allegation to the contrary.

Further evincing Judge Steeh's bias is his declaration, in *dictum*, that the border-search exception does not require a reasonable basis for believing that an international border has been or will be crossed.  In reaching that unprecedented conclusion, Judge Steeh ignored contrary caselaw from both the Supreme Court and this Court, as well as published decisions of other federal appellate courts.  To bolster the *dictum*, which defies common sense (since border searches enforce laws relating to international transit), Judge Steeh misrepresented the import of a Supreme Court decision and an unpublished decision of this Court.

Judge Steeh also erred in holding that this action is barred by the *Bivens* Case.  In affirming dismissal of that case, this Court – like Judge Steeh – assumed in the absence of any evidence that both Repic and the toll-booth officer had reasonable grounds to suspect Doe of wrongdoing.  On the basis of this blatantly inappropriate assumption, the *Bivens* courts declared that the detention was

lawful.[1]  Because Doe was deprived of a fair opportunity to litigate lawfulness, Appellants cannot properly be barred from arguing that issue in this case.

In addition to being devoid of evidentiary support and procedurally improper, the judicial finding of grounds for reasonable  suspicion makes the *Bivens* Case irrelevant.  The issue in the case at bar is whether CBP personnel acted lawfully given the *absence* of a sound basis to suspect wrongdoing.  Because the *Bivens* courts assumed that Repic and the toll-booth officer each had good reason for such suspicion, the conclusion that Doe was subject to lawful "suspicionless" detention is *dictum*.  It therefore can have no preclusive effect.

The issue-preclusion doctrine is inapplicable for another reason.  The determinative issue in the *Bivens* Case was not lawfulness, but whether the Fourth Amendment was violated.  This Court has **not** endorsed the view that an unlawful action by law enforcement is *ipso facto* unreasonable under the Fourth Amendment.  Thus the U.S. cannot meet its burden of proving that the finding by the *Bivens* courts of reasonableness **required** a finding of lawfulness.

Judge Steeh invoked the doctrine of claim preclusion to bar Doe's battery claim.  That ruling is erroneous because the doctrine's identity-of-parties

---

[1]The terms "lawful" and "unlawful" are used in this brief to refer to an action which is or is not authorized by  law, without regard to whether it comports with the U.S. Constitution.

requirement is not met.  Judge Steeh is also wrong in assuming that Doe could have sued for a non-constitutional offense under *Bivens*.

The lower court ruled that Ericksen's false-imprisonment claim is barred by the *Bivens* Case.  This was error for two reasons.  First, the *Bivens* courts (improperly) rejected Doe's allegation that neither the toll-booth officer nor the inspection-booth officer could reasonably suspect him of wrongdoing.  In the case at bar, the courts cannot (properly) reject Ericksen's allegation that there was no grounds for such suspicion.

Second, the *Bivens* Case involved no set of circumstances analogous to Ericksen's encounter with CBP personnel in the station house.  Thus the cases are to that extent factually distinguishable.

## Argument

Disqualification

Judge Steeh must "disqualify himself" from presiding in this action if "his impartiality might reasonably be questioned."  28 USC §455(a).  "[J]udicial rulings alone" can "constitute a valid basis for a bias or partiality motion" under §455(a).  *Liteky v. United States*, 510 U.S. 540, 555 (1994).  In light of numerous considerations, it can reasonably be inferred from two key *Bivens* Case rulings by Judge Steeh that because of bias, he would not render a "fair judgment" in this

case. *Id*.    He therefore abused his discretion in denying Appellants' recusal motion.

### 1.  Disregard for Procedure, Non-Existent Evidence

Judge Steeh dismissed the *Bivens* Case pursuant to a Rule 12(b)(6) motion. *See Ericksen v. Doe*, No. 15-2128, 2015 WL 4041316, at *2-6 (E.D. Mich. July 1, 2015) (unpublished), *recon. denied*, 2015 WL 13035520 (E.D. Mich. July 23, 2015) (unpublished),  *aff'd*, *D.E. v. Doe*, 834 F.3d 723 (6th Cir. 2016), *cert. denied*, __ S.Ct. __, 2017 WL 1385209 (June 12, 2017) .   In assessing such a motion, courts are bound to assume the truth of all plausible allegations in the complaint, and to make all reasonable inferences from those allegations which are favorable to the plaintiff.  *See, e.g., Wesley v. Campbell*, 779 F.3d 421, 427-28 (6th Cir. 2015). As will be explained, Judge Steeh did not comply with this procedural requirement.

Doe alleged that CBP systematically detains and searches motorists arriving by accident at the U.S. side of the Blue Water Bridge without any reasonable grounds for suspecting them of (1) wrongdoing; (2) intending to exit the U.S.; or (3) having just entered the U.S. from Canada. *See* Complaint (Case No. 15-10088), at ¶¶ 44-46, 54-58, 63-67, 82-89, 94, 97, 102-03, 122-23, 130-31, 166, 181-90,195, 197-209, 214-16, 234, 240-41, 249-51, 284-85. (This checkpoint operation is the

"TCP," short for "Turnaround Checkpoint Program.") These allegations form the foundation for Doe's alternative allegations that the TCP's purpose is to (1) detect evidence of any crime whatsoever; or (2) verify citizenship. *Id.* at ¶¶ 103-05, 137-39, 181-82, 197-200, 221-37, 242-44, 256-61, 277-80, 400-01. The allegations necessarily imply that CBP is able to distinguish turnaround motorists from international travelers with reasonable accuracy and efficiency. *See also id.* at ¶¶ 291, 297-302, 314-18, 323-30, 332-33, 338-42, 376-78, 385-88, 398, 406-07, 414-15, 422-25, 428-32, 440-42, 444-47.

Despite the unchallenged and unchallengeable plausibility of the foregoing allegations, Judge Steeh rejected them. Explicitly or by clear implication, the lower court made findings of fact that (1) toll-booth officers can't be reasonably certain that motorists who say they want to turn back from the border are telling the truth; (2) inspection-booth officers can't be reasonably certain that motorists presenting what appears to be the card handed out at the toll booth really did turn back from the border (as the card states) rather than enter the U.S. from Canada; and (3) no system could be implemented that would permit CBP officers to reliably identify turnaround motorists. *See Ericksen*, 2015 WL 4041316 at *4-5.[2] In other

---

[2]The second finding isn't self-evident; the first and third findings defy logic. ***No evidence supports the findings, meaning Doe was essentially denied procedural due process***. *See Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *see generally, e.g., United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012)

words, Judge Steeh concluded not only that CBP officers/agents staffing the toll booth and inspection booth *have reasonable grounds for suspecting turnaround motorists of lying*, but that there is *no practical means by which CBP can adequately address that alleged problem*.   These conclusions have no evidentiary support, and violate established procedure under Rule 12(b)(6).

### 2.  Distortion of *Ramsey*

The Fourth Amendment generally requires probable cause to search an automobile.   *Carroll v. United States*, 267 U.S. 132, 149, 153-54 (1925). Probable cause is not required, however, in the case of "[t]ravellers . . . *crossing an international boundary*."   *Id*. at 154 (emphasis added).   The rationale for this dispensation, *Carroll* explained, was "national self protection reasonably requiring one *entering the country* to identify himself as *entitled to come in*, and his belongings as effects *which may be lawfully brought in*."   *Id*. (emphasis added).

---

("Judicial notice is only appropriate if the matter is beyond reasonable controversy . . . ." (citation, quotation marks & brackets omitted)).   **Judge Steeh simply accepted as truth speculation of attorneys from the U.S. Department of Justice as to why their clients detain turnaround motorists**.   *See* Defendants' Reply (R21, Case No. 15-10088), at Page ID 290-91; Hearing Transcript (R42, Case No. 15-10088), at Page ID 501 l.8 – 502 l.3.   Doe emphasized in response to this supposition that the DOJ was was in effect asking the court to reject the allegations in the Complaint.   *See* Proposed Sur-Reply (R22-1, Case No. 15-10088), at Page ID 320-21 n.5; Hearing Transcript (R42, Case No. 15-10088), at Page ID 505 l.23 to 506 l.16; *id*. at Page ID 491 ll.13-19 (wherein Doe's counsel incorporated by reference the proposed Sur-Reply).   Thus Judge Steeh was presumably well aware of the tension between Doe's allegations and DOJ's unsubstantiated counter-narrative

This is the so-called "border-search exception" to the general rule requiring probable cause to search an automobile:  It is premised on the crossing of an international boundary into the United States.

A widely-cited Supreme Court decision expounded on the border-search exception's rationale:

> [S]earches made at the border, *pursuant to the . . . right of the sovereign to protect itself by stopping and examining  persons and property crossing into this country*, are reasonable simply by virtue of the fact that they occur at the border.  . . .
>
> Border searches . . . have been considered to be "reasonable" *by the single fact that the person or item in question had entered into our country from outside*. *There has never been any additional requirement* . . . .
>
> . . .
>
> The border-search exception is grounded in the . . . *right of the sovereign to control . . . who and what may enter the country* . . . . *The critical fact is that the envelopes* [opened for inspection by a customs official] *cross the border* and enter this country. . . .  *It is their entry into this country from without it that makes a resulting search "reasonable."*

*United States v. Ramsey*, 431 U.S. 606, 616-20 (1977) (italics & underscore added).[3]

---

[3]The Supreme Court has never expanded the border-search exception beyond the terms stated in *Carroll* itself – i.e., it has only recognized an exception for inbound border-crossing vehicles.  The Sixth Circuit and several other circuit courts have extended the exception to outbound border-crossing vehicles. *See United States  v. Boumelhem*, 339 F.3d 414, 420-23 (6th Cir. 2003), and cases cited therein.

Judge Steeh excerpted only the underscored part of the foregoing quotation in his opinion, thus suggesting that *Ramsey* rejected *Carroll* in favor of the proposition that a border search is rendered reasonable not by virtue of the motorist having crossed an international boundary, but by virtue of having entered a border checkpoint. *See Ericksen*, 2015 WL 4041316 at *2. As will be explained, that construction of *Ramsey* is absurd.

It's clear from the italicized portion of the at-the-border quote in *Ramsey* that the Court had only border-crossing traffic in mind. *Compare United States v. Flores-Montano,* 541 U.S. 149, 152-53 (2004) ("The Government's *interest in preventing the entry of unwanted persons and effects* is at its zenith **at the** international **border**." (italics and bold print added); *United States v. Montoya de Hernandez,* 473 U.S. 531, 537-38 (1985) (referring to the Executive's "plenary authority to conduct routine searches and seizures **at the border,** without probable cause or a warrant, in order *to regulate the collection of duties and to prevent the introduction of contraband into this country*" (italics and bold print added)); *see generally* 19 CFR §101.1 ("'Duties' means Customs duties and any internal revenue taxes which attach *upon importation*." (emphasis added)).[4]

_____

[4]This Court has implicitly assumed *Ramsey*'s "at the border" passage referred to international traffic. *Compare United States v. Lawson*, 461 F.3d 697, 699 (6th Cir. 2006) ("[S]earches made at the border . . . are reasonable simply by virtue of the fact that they occur at the border." (quoting *Ramsey*, 431 U.S. at 619) *with id*. at

Nor should this come as a surprise. *Ramsey*, *Flores-Montano* and *Montoya de Hernandez* were inbound-search cases. Indeed, prior to the events giving rise to the *Bivens* Case, litigation involving a border-checkpoint search *always* concerned inbound or outbound international travel. So given the fact that CBP had never asserted a right to conduct suspicionless searches on turnaround vehicles, it's highly unlikely that such a scenario was on *any* judge's radar screen before the issue was raised by Doe.

The balancing-of-interests assessment which underlies the border-search exception reinforces this point. Fourth Amendment cases for which there is no binding or persuasive precedent require a balancing-of-interests analysis, wherein the court assesses the extent to which the government action (1) effectively serves a legitimate government interest; and (2) intrudes upon the legitimate privacy/liberty interests of the individual. *E.g., Montoya de Hernandez*, 473 U.S. at 537. With regard to the border-search exception, the analysis is essentially the same whether the vehicle is inbound or outbound: (1) checking inbound (or outbound) traffic is an effective means of assuring that nobody/nothing is illegally brought into (or taken out of) the country; and (2) people who seek to enter (or exit) the country have a reduced privacy/liberty expectation. *See, e.g., United*

---

700 ("[R]outine border searches of a person's belongings *are made reasonable by that person's decision to enter this country*." (quoting *United States v. Irving*, 452 F.3d 110, 123 (2nd Cir. 2006); emphasis added)).

*States  v. Stanley*, 545 F.2d 661, 667 (9th Cir. 1976) (observing "the similarity of purpose, rationale, and effect" of the inbound- and outbound-border-search exceptions). Thus a border crossing, whether in the immediate past or immediate future, is integral to both "halves" of the balancing-of-interests analysis used to determine if the border-search exception applies. This is consistent with *Carroll* which, as indicated, makes clear that the exception is triggered by the "crossing [of] an international boundary." *Carroll*, 267 U.S. at 154.

The cases cited make clear that the balancing-of-interests assessment *pre-supposes cross-border travel*.  It's therefore highly unlikely that any court would presume in *dictum* to extend the border-search exception to turnaround motorists – all the more so given the fact-sensitive nature of this assessment. *See, e.g., Montoya de Hernandez*, 473 U.S. at 537 ("What is reasonable depends upon *all of the circumstances* surrounding the search or seizure . . . ." (emphasis added)); *see also, e.g., Lyng v. Northwest Indian Cemetery Prot. Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of *judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them*." (emphasis added)).  And the notion that a court would do so *without explanation* and using only vague at-the-border formulations to signal its

intent is preposterous.[5]   *See, e.g., United States v. Garcia*, 672 F.2d 1349, 1354 (11th Cir. 1982) (*Ramsey* held "that the reasonableness of . . . [border] searches *derives from* 'the single fact that the person or item in question ha[s] entered into our country from outside.'" (quoting *Ramsey*, 431 U.S. at 619; emphasis added)); *see also, e.g., United States v. Pickett*, 598 F.3d 231, 234 (5th Cir. 2010) (*per curiam*); *United States v. Mayer*, 818 F.2d 725, 727-29 (10th Cir. 1987).

### 3.  Distortion of *Humphries*

This Court extended the border-search exception to outbound border crossings in a case involving exportation of firearms.   *Boumelhem*, 339 F.3d at 420-23.   As justification, *Boumelhem* reasoned that "travelers (or exporters) undoubtedly have a *lesser expectation of privacy* when they (or their goods) leave the country [because] . . . departure from the United States is almost invariably followed by an entry into another country which will likely conduct its own border search."   *Id*. at 423 (emphasis added; citation omitted*).*[6]

An "expectation of privacy" is of course subjective.   Equally obvious, an *intention to export* is the assumption underlying the "lesser" privacy expectation

---

[5]Far from rejecting *Carroll*, as Judge Steeh (who ignored *Carroll*) necessarily implies, *Ramsey* approvingly cites and extensively quotes from that case.   *See Ramsey*, 431 U.S. at 617-22.

[6]The very fact that *Boumelhem* saw a need to articulate this rationale in support of its holding undermines the proposition that *Ramsey* extended the border-search exception to all vehicles located at a border checkpoint.

the Sixth Circuit attributed to Boumelhem.  *See id.* at 423 n.6 ("The lessened expectation of privacy attendant to the export of materials is aptly demonstrated here, as Fouad testified that he and his brother, Boumelhem, have, in recent years, annually shipped a container of car parts to Lebanon, and that every year the government of Lebanon has searched the container.").  Thus with regard to travelers, *Boumelhem* is predicated on an intention to exit the U.S**.** Of course, mindreading skills aren't demanded: CBP officers need only consider objective manifestations of a motorist's intention.  *See, e.g., United States  v. One (1) 1966 Beechcraft Baron*, 788 F.2d 384, 388 (6th Cir. 1986)  ("[C]ustoms agents are entitled to 'draw *reasonable inferences from circumstances* and base their actions on common sense judgments.'" (citation omitted; emphasis added)).

Judge Steeh eliminated the requirement of an objectively manifested intention to cross the border, without acknowledging that *Boumelhem* presupposes it.  *See Ericksen*, 2015 WL 4041316 at *3 to *5.  In doing so, he cited *United States v. Humphries*, 308 Fed. Appx. 892 (6th Cir.) (unpublished), *aff'g* Case No. 06-20339, 2007 WL 1059336 (E.D. Mich. April 9, 2007) (unpublished), *cert. denied*, 556 U.S. 1275 (2009), an outbound border-search case which upheld the lower court's denial of a suppression motion notwithstanding the driver's contention in court that he didn't intend to exit the U.S.  *Id.* at 895-96.  *See*

*Ericksen*, 2015 WL 4041316 at *3.  As will be explained, however, there is no tension between *Humphries* and *Boumelhem*.

Humphries' car was in a Canada-bound lane on the U.S. side of the Detroit-Windsor international tunnel. *Humphries*, 308 Fed.Appx. at 895-96.  *At no point prior to the vehicle search conducted at this border checkpoint did Humphries ask permission to turn back from the border*.[7]  Given these facts, it was reasonable for CBP to infer that he intended to leave the U.S. The holding in *Humphries* therefore comports with *Boumelhem*.    Indeed, *Humphries* **favorably cites** *Boumelhem*, quoting the very passage from that opinion which justifies suspicionless search of outbound vehicles on motorists' "lesser expectation of privacy when they . . . leave the country."  *Id*. at 896 (citations omitted).   It would be ludicrous for *Humphries* to reaffirm *Boumelhem*'s lesser-expectation justification if the outbound border-

_____

[7]The stopped (or slowly moving) car was approached by a CBP officer on foot who immediately ordered Humphries to drive to a designated area for the vehicle inspection. *Humphries*, 308 Fed.Appx. at 896.  Humphries claimed he had *not* entered the checkpoint when accosted by the officer – a claim the courts rejected. *Id*. at 893-96.  These atypical circumstances may explain Humphries' silence: Protesting to the CBP officer that he wasn't exiting the U.S. may have seemed unnecessary, because he thought that fact was obvious in light of the car's location. *Compare Humphries*, 2007 WL 1059336 at *2 ("Defendant claims that '[s]ince no reasonable person could have concluded that [he] . . . intended to enter the Detroit-Windsor tunnel,[the border-search exception did not apply . . . .]'" (citation omitted)) *with id*. (citing testimony from the CBP officer that, given the location of the car, Humphries had "made a commitment to go to Canada").  Or perhaps Humphries simply assumed that since he had already been ordered to proceed to an inspection area, protest would be futile.

search exception did not require at least a *reasonable presumption* of intent to exit the U.S.[8]

A decision by *Humphries* that the outbound border-search exception applies at border checkpoints regardless of a motorist's timely and objectively-manifested travel plans would have been unprecedented.  It's inconceivable that this Court would reject *Boumelhem*'s requirement of an intention to exit the U.S. (1) in *dictum*[9]; (2) without clearly stating or even clearly *implying* that it was doing so; (3) with no articulation whatsoever as to the rationale for the gratuitous pronouncement; and (4) in an *unpublished* decision.  *See generally* 6 Cir.R. 32.1(b); 6 Cir.I.O.P. 32.1(b).

Judge Steeh's construction of *Humphries* would in addition put that case at odds with *Carroll*,  *Ramsey* (properly construed), and decisions of the Sixth Circuit and other appellate courts involving aircraft and watercraft, all of which affirm that

---

[8]This Court required "reasonabl[e] certain[ty]" of a border crossing in a case involving air travel.  *Beechcraft*, 788 F.2d at 388-89.  Other circuits have also adopted this sensible standard.  *See, e.g., United States v. Romm*, 455 F.3d 990, 996 (9th Cir. 2006), *cert. denied*, 549 U.S. 1150 (2007);  *United States v. Mayer*, 818 F.2d 725, 728 (10th Cir. 1987); *see also* Abbreviated Response (R20, Case No. 15-10088), at Page ID 241-42, 245-46 (citing caselaw); Motion to Alter/Amend (R27, Case No. 15-10088), at Page ID 364-65, 370-71 (same).

[9]Judge Steeh reads *Humphries* as opining that it wouldn't have mattered if the motorist *had* requested permission to turn back from the border.  But nothing in *Humphries* can fairly be construed as evidencing a "ruling" on that hypothetical. In fact, the panel acknowledged "that *a case with sufficiently different facts might not be covered by the border search exception.*"  *Humphries*, 308 Fed.Appx. at 896 n.1 (emphasis added).

the inbound border-search exception requires a border crossing. *See* Abbreviated Response (R20, Case No. 15-10088), at Page ID 241-42, 245-46; Motion to Alter/Amend (R27, Case No. 15-10088), at Page ID 364-65, 370-71; *see generally Ramsey*, 431 U.S. at 620 (applicability of the border-search exception does not turn on "mode of transportation").

For these reasons, the essence of which Doe outlined in opposing the *Bivens* Case dismissal motion[10], *Humphries* cannot seriously be construed as discarding *Boumelhem*'s requirement of an intention to exit the country.

4. Obfuscation

Judge Steeh noted that he was obliged to "construe the complaint in [Doe's] favor." *Ericksen*, 2015 WL 4041316 at *2. He did not, however, acknowledge having rejected Doe's key factual allegations. To the contrary, he strongly and repeatedly implied that he was assuming an absence of reasonable grounds for suspicion. *See, e.g., id.* at *3 ("Given [Doe's] . . . location at the international border, customs agents could permissibly search his vehicle without . . . reasonable suspicion."); *id.* at *4 ("[N]either case [cited by Doe] involved a routine search at

---

[10]*See* Proposed Sur-Reply (R22-1, Case No. 15-10088), at Page ID 313-315; Motion to Alter/Amend (R27, Case No. 15-10088), at Page ID 372 n.6; Hearing Transcript (R42, Case No. 15-10088), at Page ID 489 l.9 - 490 l.25; *id.* at Page ID 491 ll.13-19 (wherein Doe's counsel incorporated by reference the proposed Sur-Reply).

an international border crossing where no probable cause or even reasonable suspicion is required."). This lack of openness implies bad faith. *See supra* p. 15 n.2 (explaining why Judge Steeh likely *knew* he was violating established procedure); *see generally, e.g., Silverman v. Benjamin Ctr*., 603 F.Supp. 430, 432 (E.D. N.Y. 1985) ("The plaintiffs' counsel's complete lack of candor in presenting the circumstances and legal proceedings leading to the arbitration indicates bad faith and intent to abuse the procedures of the Court.").

### 5. Glaring Omissions

Judge Steeh was presumably fully cognizant of the fact that *Humphries* didn't involve a motorist who had requested permission to turn back from the border. *See* this page n. 11. Yet he didn't acknowledge this factual difference in his opinion.

Judge Steeh also did not acknowledge either *Carroll*'s description of the border-search exception as pertaining to inbound border-crossing traffic, or the passages in *Ramsey* which explicitly state that border searches are reasonable under the Fourth Amendment *because* an international border has been crossed. *See Ramsey*, 431 U.S. at 616-20 *see also* Abbreviated Response (R20, Case No. 15-2128), at Page ID 238-39, 245, 265; Motion to Alter/Amend (R27, Case No.

15-2128), Page ID 362-64, 371-72; Hearing Transcript (R42, Case No. 15-10088), at Page ID 491 ll.20-25.

Doe stressed the fact that, consistent with *Ramsey*'s border-crossing requirement, federal circuits courts have held that the suspicionless search of aircraft is constitutionally permissible only if there is reasonable certainty that the plane crossed into U.S. airspace.  Abbreviated Response (R20, Case No. 15-10088), at Page ID 241-42, 245-46; Motion to Alter/Amend (R27, Case No. 15-10088), at Page ID 364-65, 370-71.  Judge Steeh ignored these functional-border-equivalent cases.

Judge Steeh also ignored the fact that CBP internal policy requires individualized suspicion to detain non-border-crossing persons *at border checkpoints*. Complaint (Case No. 15-10088), at ¶ 195; Abbreviated Response (R20, Case No. 15-10088), at Page ID 241, 250; Motion to Alter/Amend (R27, Case No. 15-10088), at Page ID 383.  And he ignored a decision of the Second Circuit which, consistent with CBP policy, requires reasonable suspicion to detain pedestrians at a border checkpoint who are not known to have crossed the border. *See United States v. Glaziou*, 402 F.2d 8, 12-15  (2nd Cir. 1968), *cert. denied*, 393 U.S. 1121 (1969) ; Abbreviated Response (R20, Case No. 15-10088), at Page ID 249-50; Motion to Alter/Amend (R27, Case No. 15-10088), at Page ID 371-72.

These omissions begat other omissions.  Judge Steeh didn't explain how he reconciled (1) *Carroll* with his interpretation of *Ramsey*; (2) *Boumelhem* with his interpretation of *Humphries*; or (3) elimination of the border-crossing requirement with the functional-border-equivalent cases.  This failure to provide clearly-needed explanations is itself grounds for suspicion.  *Compare, e.g., Rita v. United States*, 551 U.S. 338, 356 (2007) ("Judicial decisions are *reasoned* decisions. Confidence in a judge's use of reason underlies the public's trust in the judicial institution.  *A public statement of those reasons helps provide the public with the assurance that creates that trust.*" (emphasis added)); *Garner v. Cuyahoga County  Juv. Court*, 554 F.3d 624, 643 (6th Cir. 2009) ("[A]bsent some explication from the district court as to its reasoning . . . , we can have no confidence that the district court properly analyzed the issue.").[11]

---

[11]In affirming dismissal of the *Bivens* Case, a 2-1 majority of this Court wrote an opinion which has the very same deficiencies as Judge Steeh's decision, including total disregard for Doe's key arguments.  *Compare D.E.*, 834 F.3d at 727-28 *with* Appellant's Brief (R20, Case No. 15-2128), at Page ID 10-59 *and with* Reply in Support of Appellant's Brief (R30, Case. No. 15-2128), at Page ID 5-7, 17-33.  Assuming Fourth Amendment claims are taken as seriously by this Court as are matters involving attorney fees, the *Bivens* majority erred both in overlooking Judge Steeh's explanation void, and in declining to fill that void itself.  *See Minor v. Comm'r*,  826 F.3d 878, 882-83 (6th Cir. 2016) ("[T]he district court must provide a clear and concise explanation of its reasons for the fee award.  . . . Accordingly, *we have found an abuse of discretion where a district court fails to explain its reasoning adequately or to consider the competing arguments of the parties*. . . . Failure to provide such an explanation requires us to remand the case for further consideration." (citations & quotation marks omitted; emphasis added));

Another effect of all the omissions is to convey the misimpression that Judge Steeh's decision is consistent with, or at least not contrary to, applicable legal precedent.  One could reasonably infer that that was precisely the point of the omissions, which in turn suggests bad faith. *See generally, e.g., Golden Eagle v. Burroughs Corp.*, 809 F.2d 584, 590 (9th Cir. 1987) ("[W]hen there is an absence of good faith in *the presentation of an argument* there will be bad faith on the part of the lawyer making the argument." (emphasis added)).  Further support for that inference lies in the fact that Judge Steeh refused Doe's request to address the conflict between established precedent and his interpretation of the border-search exception's scope.  Motion to Alter/Amend (R27, Case No. 15-10088), at Page ID 371-72.  *See Ericksen*, 2015 WL 13035520 at *1-*2.

---

compare *Williams v. WCI Steel*, 170 F.3d 598, 601-02 (6th Cir. 1999) (expressing "strong disapproval" for a district court's inadequately explained order of dismissal pursuant to FRCP 12(b)(6) (citation omitted)).

The logical and obvious means of countering an inference of judicial bad faith would be a rational explanation as to why Judge Steeh ruled as he did.  The fact that a 2-1 majority of this Court offered no such explanation therefore only serves to reinforce the inference.  As does the inherently political nature of the *Bivens* Case.  *See generally, e.g.*, West, Progressive and Conservative Constitutionalism, 88 Mich.L.Rev. 641, 648 (1989-90) ("'[C]onstitutional law' is undeniably a field of law as well as politics, and constitutional . . . jurists are therefore . . . adherents to political points of view."); *compare* Leong & Belzer, Enforcing Rights,  62 UCLA L. Rev. 306, 358 n.267 (2015) ("[F]acilitating more litigation under [42 USC] § 1983 is not ideologically neutral. The stereotypically conservative view is that there is already too much such litigation, and the stereotypically liberal view is that there should be much more.").

6.  Foregone Conclusion

In rejecting Doe's Motion to Alter/Amend, Judge Steeh asserted that his ruling would be unchanged even if he *had* "accept[ed] . . . as true" the alternative allegations in the Complaint with regard to the TCP's objective. *Id.* at *1. This is a remarkable assertion inasmuch as it amounts to a concession from Judge Steeh that *he did in fact violate established procedure by refusing to credit Doe's allegations*.

Even more remarkable is the judge's unexplained declaration that he would have ruled against Doe regardless of TCP purpose. As indicated earlier, the premise underlying Doe's allegations with regard to purpose is that CBP *knows* that turnaround motorists have neither crossed nor will be crossing an international boundary. Thus Judge Steeh has in effect announced that a CBP checkpoint operation which *by design* has nothing to do with the enforcement of laws relating to cross-border traffic, and which (assuming the truth of the general-crime allegation) seeks to enforce laws that CBP *is not authorized to enforce*, *see* Abbreviated Response (R20, Case No. 15-10088), at Page ID 273-74, is nevertheless conclusively deemed to be reasonable for Fourth Amendment purposes so long as the operation is located within the confines of a border checkpoint. *See generally City of Indianapolis v. Edmond*, 531 U.S. 32, 44-47 (2000) (holding that general-crime-prevention checkpoints violate the Fourth

Amendment, but excluding "border searches" from judicial inquiry into checkpoint purpose).

This suggests that Judge Steeh was determined to rule in favor of the *Bivens* defendants come what may, even if it required him to make the preposterous declaration that what defines a "border search" is the location of the search, rather than its objective. *See generally, e.g., United States v. Barbera*, 514 F.2d 294, 296 (2d Cir. 1975) ("The Government's powers to exclude aliens from the country, . . . and to collect duties, . . . each carries with it the right to effectuate 'border searches,' under which individuals crossing international borders may have their persons, their luggage or effects, as well as the conveyances in which they cross, searched without warrant or probable cause." (footnote & citations omitted); *Alexander v. United States*, 362 F.2d 379, 381-82 (9th Cir. 1966) (noting the "[j]udicial . . . distinction" between a "border search," which is "made solely in the enforcement of Customs laws," and "other . . . searches made in connection with general law enforcement").  It also suggests that the Fourth Amendment would permit CBP to revise its card to state: "You are being allowed to turn around without traveling to Canada.  However, to assist the City of Port Huron and the State of Michigan in its ongoing effort to combat crime, CBP reserves the right to (1) detain and interrogate you; (2) run a warrants check; (3) inspect your phone, laptop, and other electronic devices; (4) search your vehicle and all occupants; (5)

remove/inspect your fuel tank; and (6) cut/examine your spare tire.  Thank you for

your patience and cooperation."  *See generally, e.g., Flores-Montano*, 541 U.S. at

155 (fuel tank); *United States v. Cortez-Rocha*, 394 F.3d 1115, 1120 (9th Cir. 2005)

(spare tire);  *Abidor v. Napolitano*, 990 F.Supp.2d 260, 264-65, 281-82 (E.D.N.Y.

2013) (laptop).


In light of the many deficiencies described above, Judge Steeh clearly

should have granted the disqualification motion.  *See generally, e.g.*, Yung.

Flexing Judicial Muscle: An Empirical Study of Judicial Activism in the Federal

Courts, Northwestern L. Rev., Vol. 105, No.1, 1, 13 (2011) ("[V]arious popular

views of judicial activism include failing to follow textual meaning, . . . issuing an

opinion inconsistent with prior precedent. . . [and] altering prior doctrines . . . ." ).

His failure to do so was an abuse of discretion.

Preclusion (Doe's Claims)

Invoking Michigan law, Doe alleges that he was unlawfully imprisoned by

CBP personnel.  Complaint at ¶¶ 76-86.  He also alleges, again pursuant to

Michigan law, that Vittorini physically contacted him under circumstances

constituting battery.  *Id*. at ¶¶ 87-91.

Judge Steeh ruled that the *Bivens* Case precludes prosecution of Doe's claims. Whether that is true is determined by federal common law. *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008).

1. Issue and Claim Preclusion -- Fairness Requirement (Both Claims)

The *Bivens* Case is potentially preclusive only if Doe was given a "full and fair opportunity to litigate the issue" of whether he was lawfully detained. *Stern v. Mascio*, 262 F.3d 600, 608 (6th Cir. 2001) (issue preclusion). *See also, e.g., EEOC v. Frank's Nursery & Crafts*, 177 F.3d 448, 462-63 (6th Cir. 1999) (claim preclusion). Dismissal of that case was premised on a finding of fact that the CBP officers staffing the toll booth and inspection booth had reasonable grounds to suspect Doe of wrongdoing. *See supra* pp 13-15. No evidence supports this finding, and it was procedurally improper for the *Bivens* courts to reject the truth of Doe's allegation to the contrary. *See id*. Doe was therefore denied a "fair opportunity" to challenge the lawfulness of his detention. *See generally Montana v. United States*, 440 U.S. 147, 164 n.11 (1979) (Issue preclusion requires that the prior litigation be *procedurally* fair.). Thus neither of Doe's claims is barred by the *Bivens* Case.

2. Issue Preclusion – Necessity Requirement (Both Claims)

A valid defense to the allegation of battery is that Vittorini's physical contact with Doe was reasonably necessary to effect a lawful arrest. *Young v. Barker*, 158 Mich.App. 709, 723 (1987) (*per curiam*). In the *Bivens* Case, the courts declared that the arrest was lawful. *D.E.*, 834 F.3d at 728; *Ericksen*, 2015 WL 4041316 at \*2. But that declaration bars the claim of battery only if it were *essential* to the courts' holding that the arrest was reasonable under the Fourth Amendment. *Stern*, 262 F.3d at 608. For either of two reasons, the necessity requirement isn't met.

First, this Court has **not** endorsed the proposition that an unlawful arrest is necessarily unreasonable. *See Boumelhem*, 339 F.3d at 419 n.1 (declining to address "whether a border search is unconstitutional when unauthorized by statute"); *see also, Embody v. Ward*, 695 F.3d 577, 581 (6th Cir. 2012) ("The '[m]ere violation of a state statute does not infringe the federal Constitution.'" (citation omitted)); *compare, e.g., Ting v. United States,* 927 F.2d 1504, 1513 (9th Cir. 1991) ("[E]ven though a federal officer's conduct conforms with the United States Constitution and therefore results in a determination that the officer is not liable under *Bivens*, that same conduct may contravene the law of the state in which the act or omission occurred and thereby subject the United States government to liability under the FTCA."); *People v. Lyon*, 227 Mich.App. 599, 611 (1998) ("Michigan courts have distinguished between constitutionally invalid

and statutorily invalid arrests and have refused to apply the exclusionary rule to mere statutory violations.").    The U.S. therefore cannot prove that in order to conclude that Doe's detention was reasonable, the *Bivens* courts *had* to make a determination that the detention was lawful.[12]    *See generally, e.g., Spilman v. Harley*, 656 F.2d 224, 229 (6th Cir. 1981) (The party asserting preclusion has the burden of proving that the requisite elements are satisfied.).

Second, Appellants have plausibly alleged that there was no sound basis for individualized suspicion when they were detained.    Complaint at ¶¶ 63, 65 That allegation *must* be accepted as true.    *Wesley*, 779 F.3d at 427-28.    The finding of lawful detention in the *Bivens* Case, however, was predicated on the courts' determination that the toll-booth and inspection-booth officers *reasonably suspected Doe of wrongdoing*.    *See supra* pp. 13-15. Thus judicial statements in that case to the effect that Doe was subject to lawful "suspicionless" detention are *dicta* and non-preclusive.    *See generally Coca-Cola v. Procter & Gamble*, 822

---

[12]The wisdom of the necessity requirement is amply demonstrated by the cursory fashion in which the *Bivens* courts addressed the issue of statutory authorization. *See generally, e.g., United States v. Juvenile Female*, 566 F.3d 943, 948 (9th Cir. 2009), *cert. denied*, 130 S.Ct. 1111 (2010)  (CBP authority is defined and limited by statute.).    This Court devoted exactly one sentence to the topic.    *See D.E*, 834 F.3d at 723;.    Judge Steeh's treatment of the subject is scarcely longer, and he doesn't even explicitly assert that the suspicionless search of a turnaround vehicle **is** authorized by statute.    *See  Ericksen*, 2015 WL 4041316 at *2.    *Neither court identified any statute which authorized Vittorini to detain Doe for the benefit of local law enforcement.*

F.2d 28, 30 (6th Cir. 1987) (Judicial statements that aren't "essential to the court's holding" are *dicta* and hence "not binding precedent."); *United States v. Shepperson*, 739 F.3d 176, 180 n.2 (4th Cir. 2014) (Language in an opinion which is "unrelated to the *ratio decidendi*" is "non-binding" *dictum*.).

Based on the foregoing, Judge Steeh erred in holding that Doe's claims are barred by the doctrine of issue preclusion.

### 3. Claim Preclusion (Battery Claim)

Claim preclusion applies only to claims which "should have been litigated in the prior action." *Wilkins v. Jakeway*, 183 F.3d 528, 532 (6th Cir. 1999). This means that if Doe could not properly raise his battery claim in the *Bivens* Case, there is no claim preclusion.

Doe does *not* allege that Vittorini's physical contact was unconstitutional; he alleges that it was *unlawful*. *See* Complaint at ¶ 90. Such a claim isn't cognizable under *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971). *See, e.g., Van Strum v. Lawn*, 940 F.2d 406, 410 (9th Cir. 1991); *see also Nuclear Transportinor v.United States*,  890 F.2d 1348, 1352 (6th Cir. 1989) (A "*Bivens*-type action cannot be brought against" the U.S.). Thus Judge Steeh erred in concluding that Doe's claim

for battery "should have" been alleged in the *Bivens* Case.  Dismissal Order [R19] at Page ID 205.

Nor can preclusion legitimately be premised on the reasoning that Doe "should have" added Appellee as a defendant in the earlier litigation for purposes of asserting an FTCA-based battery claim.    Any such approach may needlessly increase litigation costs, and result in barring the *Bivens* claims altogether.  *See* 28 USC §2676; *see also, e.g., Serra v. Pichardo*, 786 F.2d 237, 241-42 (6th Cir. 1986). That bar would in turn deprived the plaintiff of the opportunity for a jury trial, and the possibility of punitive damages.  *See Carlson v. Green*, 446 U.S. 14, 19-20 (1980).  Nor is judicial "efficiency" necessarily achieved by forcing FTCA and *Bivens* claims to be concurrently prosecuted:  The outcome of a *Bivens* suit may, after all, persuade the plaintiff to forego any FTCA claim, or it may become time-barred.  *See generally* 28 USC §§ 2401(b), 2675.

The Supreme Court has made clear that an FTCA action is not a "substitute" for recourse to  *Bivens*.  *Carlson*, 446 U.S. at 18-20.  Forcing plaintiffs to combined the two forms of relief in a single lawsuit would as a practical matter destroy their "complementary" relationship.  *Id*.  The Court should therefore reject any such requirement.  *See Sterling v. United States*, 85 F.3d 1225, 1229 (7th Cir. 1996) ("[A] decision in the [federal] employee's favor [in a *Bivens* lawsuit] is not automatically preclusive in the United States' favor [in an FTCA action].  . . .

[W]hen sequential suits name different parties, only issues actually and necessarily decided in the first case carry over to the second under the doctrine of issue preclusion."); *Ting*, 927 F.2d at 1513 n.10 (A *Bivens* "judgment against individual federal officers . . . does not preclude a later action . . . under the FTCA."); *see also Montana*, 440 U.S. at 151, 155-56 (Even when the U.S. controlled prosecution of an earlier lawsuit filed by a federal contract, the doctrine of claim preclusion did not bar it from filing a subsequent action against the same party in its own name.).[13]  *But see Burnette v. Bureau of Prisons*, Case No. CV06-1396-A, 2009 WL 3415301, at *2 (W.D. La. 2009) (Kirk, J., magistrate judge; unpublished), *adopted as mod'd*, 2009 WL 3180223 (W.D. La. 2009) (unpublished).


For these reasons, Judge Steeh erred in holding that Doe's battery claim is barred by the doctrine of claim preclusion.

---

[13]*Sterling* is directly on point, and *Montana* is closely analogous.  Yet while Appellants cited both cases, *see* Response [R9] at Page ID 102-03, Judge Steeh ignored *Sterling,* and falsely implied that invoking claim preclusion was consistent with *Montana.  See Ericksen*, 2017 WL 930034 at *4.  This apparent subterfuge provides further evidence of pro-government bias.

<u>Failure to State a Claim (Ericksen's Claim)</u>

Citing *D.E., supra* p. 13, Judge Steeh ruled that Ericksen failed to state a "viable" claim for false imprisonment.  Order [R19], at Page ID 208.  As will be explained, this was error.

Ericksen alleges that he was detained by CBP notwithstanding the absence of reasonable grounds to suspect him of wrongdoing.  Complaint at ¶¶ 65, 92-99.  That allegation must be accepted as true for purposes of Appellee's Rule 12(b)(6) motion.  *Wesley*, 779 F.3d at 427-28.

The rationale for the finding of lawful detention in *D.E.*, on the other hand, was that Doe **was** reasonably suspected of wrongdoing.  *See D.E.*, 834 F.3d at 727 ("It would be dangerous (and quite stupid) for CBP officers to assume that every traveler who claims to be there by mistake  -- or who possesses an easily fabricated laminated card -- is telling the truth.").  Thus comments in that case regarding "suspicionless" detention are non-binding *dicta*.  *See supra* p. 35.

The different circumstances concerning Ericksen's encounter with CBP at the toll booth and station house also warrant careful consideration.  Unlike Doe, Ericksen did *not* tell the toll-booth officer that he had arrived inadvertently at the Blue Water Bridge:  To the contrary, he made it clear at both the toll booth *and* the station house that he had driven to the bridge in order to obtain information from

CBP.  Complaint at ¶¶ 51, 54.  Moreover, Ericksen walked *unescorted* through an entrance to the CBP station house that is not the same entrance used by CBP to escort motorists parked in the secondary inspection area.  *Id*. at ¶¶ 18, 53.  *D.E.* involved no such scenarios, and the case does not even purport to address them.

"[C]ustoms agents are entitled to 'draw reasonable inferences from circumstances and base their actions on common sense judgments.'"  *Beechcraft Baron*, 788 F.2d at 388 (citation omitted).    Thus a question presented by Ericksen's claim is whether, given the situation described, the toll-booth officer and station-house personnel could reasonably suspect wrongdoing.  *See generally, e.g., Montoya de Hernandez*, 473 U.S. at 537 (quoted *supra* p. 19).

Because this Court assumed in  *D.E.* that Doe could reasonably be suspected of lying, and because *D.E.* involved substantially different facts from those presented in connection with Ericksen's claim, Judge Steeh erred in holding that the prior case mandates dismissal of the claim.

## **Conclusion**

In his opinion dismissing the *Bivens* Case, Judge Steeh purported to comply with the procedural requirement that he credit Doe's allegations, but didn't actually do so.  He instead made findings of fact unfavorable to Doe which were supported

by no evidence whatsoever.  When Doe pointed out this irregularity in his motion to alter/amend, Judge Steeh replied in effect that the outcome would have been the same even if he hadn't tipped the scales in favor of the defendants.

Judge Steeh misrepresented *Ramsey* and *Humphries*.  He ignored *Carroll*. He ignored federal appellate decisions which, consistent with *Carroll* and *Ramsey*, require reasonable certainty of international travel to conduct a suspicionless border search of aircraft.   In his order denying the motion to alter/amend, Judge Steeh refused Doe's request that he explain how he reconciled his ruling with the cases Doe had cited.

One could reasonably infer from the dismissal order, and the Court's refusal to amend the order after Doe had highlighted its many deficiencies, that Judge Steeh deliberately denied Doe a fair hearing.  One could also reasonably conclude that in the case at bar, involving as it does many of the same facts and similar politically-charged legal issues, Appellees can expect the same dismissive treatment that Doe received in the *Bivens* Case.  Judge Steeh therefore clearly erred in refusing to disqualify himself.

The lower court likewise erred in ruling that the *Bivens* Case barred prosecution of this case.  To reach this conclusion, Judge Steeh (1) ignored the fact that Doe was denied a procedurally fair hearing in connection with the dismissal

motion filed by the *Bivens* defendants; (2) misrepresented or ignored decisions of the Supreme Court and 7th Circuit making clear that a person may file separate, sequential lawsuits under *Bivens* and FTCA stemming from the same nucleus of facts; (3) ignored Appellee's inability to prove that a finding of lawfulness was **required** in the *Bivens* Case; (4) ignored the fact that the finding in the *Bivens* Case of lawful detention was premised on the courts' assumption that Doe was reasonably suspected of wrongdoing; (5) ignored the fact that a claim for *unlawful* touching (battery) cannot be brought pursuant to *Bivens*; (6) ignored the fact that the U.S. cannot be sued pursuant to *Bivens*;  and (7) ignored the different fact pattern presented by Ericksen's claim vis-à-vis the *Bivens* Case allegations.

Because of these errors, Appellants ask that the Court reverse Judge Steeh's rulings on the disqualification and dismissal motions.

/s/ Michael Ericksen (P40385)
Attorney for Plaintiff-Appellant
June 19, 2017

## Certificate of Compliance

This brief complies with the type-volume limitation imposed by FRAP 32(a)(7)(B)(i).  The total word count is 9,562.

/s/ Michael Ericksen (P40385)

## Certificate of Service

On June 19, 2017, I electronically filed this brief with the Clerk of Court using the ECF system, which will send notice of the filing to other attorneys of record.

/s/ Michael Ericksen (P40385)
Attorney for Plaintiffs-Appellants
June 19, 2017

## Addendum

### *Designation of Documents*

[R1] Complaint (Page ID 1-13)

[R7, R7-1, R7-2, R7-3, R7-4] Defendant's Motion to Dismiss (Page ID 24-85)

[R8] Notice of Determination of Motion Without Oral Argument (Page ID 86)

[R9, R9-1, R9-2, R9-3] Plaintiffs' Response to Dismissal Motion  (Page ID 87-114)

[R15, R15-1, R15-2, R15-3] Plaintiffs' Motion for Disqualification    (Page ID 143-175)

[R16] Reply in Support of Defendant's Motion to Dismiss (Page ID176-183)

[R17] Order Denying Plaintiffs' Disqualification Motion (Page ID 184-185)

[R19] Order Granting Defendant's Dismissal Motion (Page ID 195-209)

[R20] Judgment (Page ID 210)

[R21] Plaintiffs' Notice of Appeal (Page ID 211-212)

[R22] Certificate of Service (Page ID 213)